UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

EDDYSONT DATUS,

Petitioner,

v.

MARKWAYNE MULLIN, et al.,

Respondents.

Case No. 5:26-cv-06031-SRM-DFM

**ORDER GRANTING PETITIONER'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER [2]**

**A241-942-247**

Before the Court is an Ex Parte Application for a Temporary Restraining Order ("Motion") filed by Petitioner Eddysont Datus ("Petitioner"). Dkt. 2. The Respondents did not file an opposition. The Court has reviewed the Petitioner's arguments, relevant legal authority, and the record in this case. For the reasons discussed below, the Court **GRANTS** Petitioner's Motion.

## I. BACKGROUND

Petitioner is a native of Haiti and a noncitizen currently detained by Respondents at the Desert View Annex Detention Facility in Adelanto, California. Dkt. 1 at 2. On August 13, 2022, the Department of Homeland Security paroled Petitioner into the United States pursuant to the Immigration and Nationality Act Section 212(d)(5)(A). Dkt. 1-1 at 2; 2 at 2. Following the Petitioner's release on parole, he applied for Temporary Protected Status

("TPS"), asylum, and for employment authorization. Dkt. 1 at 2; 1-2 at 2; 1-3 at 2. Petitioner's TPS application and employment authorization were approved, allowing him to lawfully remain and work in the country until July 14, 2030. Dkt. 1-2 at 2; 1-3 at 2.

On September 21, 2026, Petitioner was arrested by ICE officers in Palm Beach, Florida and taken into custody. Dkt. 2 at 2. He was subsequently transferred to the Desert View Annex Detention Facility in Adelanto, California where he remains in custody. *Id.* Petitioner argues that based on the information presently available to his counsel, the Department of Homeland Security has not lawfully terminated Petitioner's parole. *Id.*

## II. LEGAL STANDARD

The standard for issuing a temporary restraining order is "substantially identical" to that for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Preliminary injunctions are "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Under Federal Rule of Civil Procedure 65, a court may grant a preliminary injunctive relief to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65(b). A party seeking a preliminary injunction must demonstrate the following factors: (1) a likelihood success on the merits; (2) a likelihood that he will suffer irreparable harm without an injunction; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20.

The Court may issue an injunctive relief, even if the moving party cannot show a likelihood of success on the merits, if "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. For the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Preliminary injunctive relief should be denied if the probability of success on the merits is low. *See Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984) ("[E]ven if the balance of hardships tips decidedly in favor of the

moving party, it must be shown as an irreducible minimum that there is a fair chance of success on the merits.”).

The Court will also convert Petitioner's Motion for Temporary Restraining Order into one for preliminary injunction. Respondents had notice, opportunity to respond, and the ability to be heard. There is no benefit in additional briefing and the standard is the same. As such, given the nature of the relief granted by this Order and so as to appropriately permit Respondents the ability to appeal should they choose to do so, the Court converts this to a Motion for Preliminary Injunction. *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1090 (E.D. Cal. 2025); *see also Bennett v. Medtronic, Inc.*, 285 F.3d 801, 804 (9th Cir. 2002) (“Ordinarily, temporary restraining orders, in contrast to preliminary injunctions, are not appealable ....”).

## III. DISCUSSION

As previously discussed, the standard for granting a temporary restraining order and a preliminary injunction are substantively identical. Here, the Petitioner argues two grounds upon which a temporary restraining order should be granted. First, Petitioner argues his detention is unconstitutional under his Fifth Amendment procedural due process rights. Dkt. 1 at 9–11; 2 at 3. Second, Petitioner further argues that his detention is a violation of the Administrative Procedure Act (“APA”). Dkt. 1 at 11–12.

### A. Likelihood of Success on the Merits

Petitioner argues he is entitled to a release order because the Government violated both his procedural due process rights and the APA by detaining him without notice and an opportunity to be heard. Dkt. 1 at 9–12. As discussed below, Petitioner is likely to succeed on the merits of his Fifth Amendment procedural due process claim, satisfying the first *Winter* factor. Thus, the Court need not evaluate the likelihood of success of Petitioner’s APA claim.

The Court must first determine if Due Process applies to the Petitioner. “[T]he Due Process Clause applies to all persons within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent.” *Zadvydas v.*

*Davis*, 533 U.S. 678, 693 (2001). Accordingly, "[i]t is well established that the Fifth Amendment entitles [noncitizens] to due process of law in the context of removal proceedings." *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (internal quotations removed). Thus, the Court finds that Petitioner has a right to Due Process because he is a person within the United States who is being deprived of his liberty by the State without notice.

Next, the court must determine "what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Due process "requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). "Just as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen] have a liberty interest in remaining out of custody on bond." *Ortega v. Bonnar*, 415 F.Supp.3d 963, 969 (N.D. Cal. 2019). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Further, the Constitution "typically requires some kind of a hearing before the State deprives a person of liberty or property, particularly because the loss of liberty cannot be fully compensated after the fact." *Salcedo Aceros v. Kaiser*, 2025 WL 2637503, at *5 (N.D. Cal. Sept. 12, 2025 (citation and quotation omitted).

In determining what procedures are required by Due Process, a district court applies the three-part *Mathews* test, which analyzes the following: (i) "the private interest" at stake; (ii) "the risk of an erroneous deprivation" without additional procedures and "the probable value . . . of additional or substitute procedural safeguards;" and (iii) "the Government's interest, including the function involved and the fiscal and administrative burdens imposed by the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

**1. Private Interest at Stake**

When determining the private interest at stake, courts look to the degree of potential deprivation. *See Nozzi v. Hous. Auth. of City of Los Angeles*, 806 F.3d 1178, 1193 (9th Cir.

2015). Here, there is a high degree of potential deprivation because Petitioner has been deprived of his physical liberty. Thus, this factor favors the Petitioner.

**2. Risk of Erroneous Deprivation**

"There is an unacceptably high risk that the government would erroneously deprive—or already has erroneously deprived—Petitioner of her liberty interest absent a pre-detention hearing." *Hasratyan v. Bondi*, 2026 WL 288909, at *3 (C.D. Cal. Feb. 2, 2026). Due Process "protects against immigration detention that is not reasonably related to the legitimate purpose of effectuating removal or protecting against danger and flight risk." *Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023) (citing *Zadvydas*, 533 U.S. at 690–91)).

Here, Respondents took Petitioner into immigration custody without notice or warning, and without providing him any opportunity to content his detention before a neutral decisionmaker, despite him being paroled into the United States and having a valid employment authorization until 2030. Without a bond or custody hearing on the merits, the risk of erroneous deprivation is high. Therefore, this factor favors the Petitioner.

**3. Government's Interest**

In determining the Government's interest, the Court must look at the function involved and the fiscal and administrative burdens imposed by the additional procedures. Here, the Court finds that the Government's interest in placing Petitioner in detention without a hearing is low. *See Doe v. Becerra*, 787 F.Supp. 3d 1083, 1094 (E.D. Cal. 2025); *J.A.E.M. v. Wofford*, 812 F. Supp. 3d 1058, 1071 (E.D. Cal. 2025) ("In immigration court, custody hearings are routine and impose a minimal cost."). Nor is there any "meaningful countervailing government interests that supports detaining paroled noncitizens" like Petitioner. *See Hasratyan*, 2026 WL 288909, at *4. Thus, this factor favors Petitioner.

Having found that all three *Mathews* factors favor Petitioner, the Court holds that procedural due process requires a pre-deprivation hearing on the merits. Accordingly, Petitioner has shown a likelihood that he will success on the merits of his procedural due process claim.

### B. Irreparable Harm

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see Hernandez v. Sessions*, 872 F.3d 976, 994–95 (9th Cir. 2017) (recognizing the "irreparable harms imposed on anyone subject to immigration detention" and holding that plaintiffs had "established a likelihood of irreparable harm by virtue of the fact that they are likely to be unconstitutionally detained for an indeterminate period of time"). Courts hold that no further showing of irreparable injury is necessary where the alleged deprivation of a constitutional right is involved. *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (internal quotation marks omitted). Therefore, the Court finds that Petitioner would be immediately and irreparably harmed by his continued detention, depriving Petitioner of his liberty in violation of his due process rights.

### C. Balance of Equities and Public Interest

Where the nonmoving party is a governmental entity, the last two *Winter* factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). These two factors weigh heavily in favor of Petitioner, who seeks to vindicate a constitutional liberty interest—his freedom—in the face of a likely unlawful detention. It is in the general public's interest to ensure that no one can be detained and be held in the Government's custody for months, without adequate notice or an opportunity to be heard. *See Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). Accordingly, the Court finds that these two factors weigh in favor of granting the temporary restraining order.

## IV. CONCLUSION

Accordingly, Petitioner's Ex Parte Application for a Temporary Restraining Order is converted into a Preliminary Injunction and **GRANTED**. The Court further **ORDERS** that:

1) Respondents shall release Petitioner from custody and return any of his personal belongings to him within twenty-four (24) hours, and shall not impose any release restrictions on Petitioner, such as electronic monitoring, unless deemed necessary at a future pre-deprivation bond hearing;

2) Respondents must file with the Court a Notice of Compliance within twenty-four (24) hours of releasing the Petitioner;

3) Respondents may not re-detain Petitioner during the pendency of these proceedings without, at a minimum, an individualized notice describing the change in circumstances necessitating his arrest and detention, and a pre-deprivation bonding hearing before an immigration judge. If Petitioner is again placed into detention in this District following the proceedings complain with this order, Respondents shall not transfer or remove Petitioner from this District unless executing a final order or removal issued against Petitioner.

**IT IS SO ORDERED.**

Dated: October 16, 2026

HON. SERENA R. MURILLO
UNITED STATES DISTRICT JUDGE